**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **Case No. 18-30648 (DRJ)** |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.**[1] | § | |
| | § | **Re: Docket Nos. 33 & 71** |

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11
BANKRUPTCY CASES, (II) COMBINED HEARING ON DISCLOSURE
STATEMENT, CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINES,
AND SUMMARY OF DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

1.     On February 15, 2018 (the "**Petition Date**"), Fieldwood Energy LLC and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

2.     On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "**Voting Agent**"), at the following: http://cases.primeclerk.com/fieldwood.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at 855-631-5346 (domestic) or 917-460-0913 (international) or by sending an electronic mail message to fieldwoodballots@PrimeClerk.com with "Fieldwood" in the subject line.

3.     The Debtors are proposing a restructuring that will accomplish two important goals:  a substantial deleveraging of their capital structure to reduce the go-forward cost of capital for their otherwise healthy businesses, and the acquisition of certain strategic deepwater

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

assets in the Gulf of Mexico (the "**Purchased Assets**").   The acquisition provides several significant benefits to the Debtors:

- Materially adds to the Debtors' producing asset base and cash flow with significant upside potential through development and exploration opportunities;

- The Purchased Assets are complementary to the Debtors' shallow-water operations;

- The Debtors will hire certain members of the seller's technical and operational teams to expand existing deepwater and subsea capabilities; and

- The transaction will reduce the Debtors' gross leverage from 5.9x 2018E EBITDA to 1.9x 2018E EBITDA.

4.        Accordingly, this deleveraging, combined with the asset purchase, will enhance the Debtors' long-term growth prospects and competitive position vis-à-vis its peer companies, greatly improve its leverage ratio and cash flows, and allow the Debtors to emerge from the chapter 11 cases as a stronger, reorganized group of entities better able to capitalize on an improving oil and gas industry.  The effects of the restructuring can be summarized as follows:

| Prepetition Capital Structure | Post-Restructuring Capital Structure |
|---|---|
| *Prepetition First Lien Term Loans and Reserve Based Term Loans* ~$1.143 billion in term loans | *Exit First Lien Term Loans* ~$1.143 billion in term loans |
| *Prepetition FLLO Loans* ~$518 million in term loans | *Exit Second Lien Term Loans* ~$518 million in term loans |
| *Prepetition Second Lien Term Loans and Prepetition Sponsor Second Lien Term Loans* ~$1.626 billion in term loans | Equity in Energy Inc. |
| *Total Current Funded Debt  = ~$3.287 billion* | *Total Reorganized Funded Debt  = ~$1.660 billion* |
| *Prepetition RBL Facility* ~$148 million in undrawn letters of credit | *Exit LC Facility* ~$148 million in undrawn letters of credit |

**Information Regarding Plan**

5.        On February 15, 2018, the Debtors commenced solicitation of votes to accept the Plan from the holders of Claims in Class 4 (FLTL Claims), Class 5 (FLLO Claims), and Class 6 (SLTL Claims), of record as of February 12, 2018 (the "**Voting Record Date**") via physical and/or electronic mail.  Only holders of Claims in Classes 4, 5, and 6, are entitled to vote to accept or reject the Plan.  All other classes of claims are either deemed to accept or reject the Plan and, therefore, are not entitled to vote. **The deadline for the submission of votes to accept or reject the Plan is March 14, 2018 at 5:00 p.m. (Prevailing Central Time).**

6.        A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Plan and any objections thereto will be held before the Honorable David

R. Jones, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002, on **April 2, 2018 at 10:00 a.m. (Prevailing Central Time)** or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Combined Hearing. The adjourned date or dates will be available on the electronic case filing docket and the Voting Agent's website at https://cases.primeclerk.com/fieldwood.

7.      The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan is **March 21, 2018, at 4:00 p.m. (Prevailing Central Time)** (the "**Objection Deadline**").  Any objections to the Disclosure Statement and/or the Plan must be: (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules.

8.      In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties so as to be received by the Objection Deadline:

(i)     Fieldwood Energy LLC, 2000 W. Sam Houston Parkway S., Suite 1200, Houston, Texas 77042 (Attn: Thomas R. Lamme, Esq., Deputy General Counsel and Secretary);

(ii)    Proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1700, Houston, Texas  77002 (Attn: Alfredo R. Pérez, Esq.) and 767 Fifth Avenue, New York, New York 10153 (Attn: Matthew S. Barr, Esq., Ray C. Schrock, P.C., Esq., and Jessica Liou, Esq.);

(iii)   Counsel to Cortland Capital Market Services LLC, agent under the Prepetition Second Lien Term Loan Facility, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York, 10017 (Attn: Damian S. Schaible, Esq., Darren S. Klein, Esq., and Natasha Tsiouris, Esq.);

(iv)    Counsel to Riverstone Holdings LLC and certain of its affiliated funds, Vinson & Elkins LLP, 666 Fifth Avenue, 26th Floor, New York, New York 10103-0040 (Attn: David S. Meyer, Esq. and Jessica Peet, Esq.);

(v)     Counsel to certain lenders under that Prepetition First Lien Term Loan Facility, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York 10036 (Attn: George Davis, Esq., David Johnson, Esq., and Daniel Shamah, Esq.);

(vi)    Counsel to Citibank, N.A., agent under the Prepetition Reserves-Based Lending Facility, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Ana Alfonso, Esq.);

(vii)   Counsel to the Seller, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: William A. Wood III, Esq.);

(viii)   Counsel to Apache Corporation, Andrews Kurth Kenyon LLP, 600 Travis, Suite 4200, Houston, Texas 77002 (Attn: Robin Russell, Esq.); and

(ix)   The Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, TX 77002.

## Summary of Plan[2]

9.   Solicitation of votes on the Plan commenced prior to the Petition Date.  The following chart summarizes the treatment provided by the Plan to each class of Claims and Interests:

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount and Approx. Percentage Recovery |
|---|---|---|---|
| Administrative Expenses Excluding Fee Claims | Paid in full in cash. | N/A | Estimated Percentage Recovery: 100% |
| Fee Claims | Paid in full in cash. | N/A | Estimated Percentage Recovery: 100% |
| DIP Facility Claims | Paid in full in cash or otherwise satisfied in a manner acceptable to holder of the claim. | N/A | Estimated Percentage Recovery: 100% |
| Priority Tax Claims | Paid in full in cash or otherwise treated consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | N/A | Estimated Percentage Recovery: 100% |
| 1 (Priority Non-Tax Claims) | Paid in full in cash or otherwise treated consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: $2,000,000 Estimated Percentage Recovery: 100% |
| 2 (Other Secured Claims) | Each holder of an Allowed Other Secured Claim will receive, on account of such Allowed Claim, at the option of the Reorganized Debtors:  (a) Cash in an amount equal to the Allowed amount of such Claim, (b) reinstatement or such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (c) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: $0 Estimated Percentage Recovery: 100% |

---

[2] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

4

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount and Approx. Percentage Recovery |
|---|---|---|---|
| 3 (RBL Claims) | Each holder of an Allowed RBL Claim will be paid in full in cash. | Unimpaired (**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: $554,768 Estimated Percentage Recovery: 100% |
| 4 (FLTL Claims) | On the Effective Date, each holder of an Allowed FLTL Claim shall receive (a) on account of the outstanding principal amount of such Claim, its Pro Rata share of the lending commitments arising under the Exit First Lien Term Loan Facility, secured by a first-priority lien on (i) substantially all of the property of the Reorganized Debtors that secured the FLTL Claims pursuant to the Prepetition First Lien Term Loan Agreement and the other applicable Loan Documents (as defined in the Prepetition First Lien Term Loan Agreement) and (ii) substantially all of the Purchased Assets, in each case, on the terms and subject to the limitations set forth in the Exit First Lien Credit Agreement, on a "last-out" basis, and (b) on account of all accrued and unpaid interest payable through the Effective Date and for all reasonable and documented expenses and other amounts payable under the Prepetition First Lien Term Loan Agreement, payment in Cash. | Impaired (**Entitled** to vote) | Estimated Allowed Amount: $1,151,591,744 Estimated Percentage Recovery: 100% |
| 5 (FLLO Claims) | On the Effective Date, each holder of an Allowed FLLO Claim shall receive (a) on account of the outstanding principal amount of such Claim, its Pro Rata share of the lending commitments arising under the Exit Second Lien Term Loan Facility, secured by a second-priority (in respect of the Exit LC Facility and the Exit First Lien Term Loan Facility) lien on (i) substantially all of the property of the Reorganized Debtors that secured the FLLO Claims pursuant to the Prepetition FLLO Term Loan Agreement and the other applicable Loan Documents (as defined in the Prepetition FLLO Term Loan Agreement) and (ii) substantially all of the Purchased Assets, in each case, on the terms and subject to the limitations set forth in the Exit Second Lien Credit Agreement and (b) on account of accrued and unpaid interest payable through the Effective Date and for all reasonable and documented expenses and other amounts payable under the Prepetition FLLO Credit Agreement, payment in Cash. | Impaired (**Entitled** to vote) | Estimated Allowed Amount: $534,678,024 Estimated Percentage Recovery: 100% |
| 6 (SLTL Claims) | On the Effective Date, each holder of an Allowed SLTL Claim shall receive its Pro Rata share of (a) New Equity Interests representing, in the aggregate, 20.25% of the New Equity Interests issued on the Effective Date, and (b) 100% of the Subscription Rights to acquire 75% of the New Equity Interests for $525 million in accordance with the Rights Offering Procedures, in each case the New Equity Interests subject to dilution by a management incentive plan. | Impaired (**Entitled** to vote) | Estimated Allowed Amount: $1,696,819,601 Estimated Percentage Recovery: 8.35% |

| Class and Designation | Treatment | Impairment and Entitlement to Vote | Estimated Allowed Amount and Approx. Percentage Recovery |
|---|---|---|---|
| 7 (General Unsecured Claims) | The Debtors shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: $160,000,000[3] Estimated Percentage Recovery: 100% |
| 8 (Intercompany Claims) | On or after the Effective Date, all Intercompany Claims will be paid, adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or Reorganized Debtors, as applicable, in their sole discretion. All Intercompany Claims between any Debtor and a non-Debtor affiliate will be Unimpaired under the Plan. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: $0 Estimated Percentage Recovery: 100% |
| 9 (Existing Holdings Interests) | As soon as practicable following the distributions of New Equity Interests on the Effective Date, Fieldwood Holdings shall liquidate and dissolve pursuant to applicable law and the Reorganized Debtors shall provide for the distribution of Fieldwood Holdings' New Equity Interests (received pursuant to Section 4.10(a) of the Plan) to the holders of Existing Holdings Interests in the priorities set forth in Fieldwood Holdings' organizational documents and applicable law. Any other assets of Fieldwood Holdings (which there is expected to be none) shall vest in Reorganized Energy Inc. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: N/A Estimated Percentage Recovery: N/A |
| 10 (Existing Energy Inc. Interests) | On the Effective Date, the Existing Energy Inc. Interests shall be cancelled without further action by or order of the Bankruptcy Court.<br><br>Each holder of an Allowed Existing Energy Inc. Interest shall receive its Pro Rata share of New Equity Interests representing, in the aggregate, 0.25% of the New Equity Interests issued on the Effective Date (subject to dilution by the Management Incentive Plan). | Impaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: N/A Estimated Percentage Recovery: N/A |
| 11 (Intercompany Interests) | On the Effective Date, all Intercompany Interests will be treated as set forth in Section 5.15 of the Plan. | Unimpaired<br><br>(**Not entitled** to vote because presumed to accept) | Estimated Allowed Amount: N/A Estimated Percentage Recovery: N/A |

## Non-Voting Status of Holders of Certain Claims and Interests

10.     As set forth above, certain holders of Claims and Interests are **not** entitled to vote on the Plan. As a result, such parties did not receive any ballots and other related solicitation materials to vote on the Plan. The holders of Claims in Class 1 (Priority Non-Tax

---

[3] This estimate includes management fees accrued and payable to Riverstone pursuant to arms'-length prepetition management services agreements.

Claims), Class 2 (Other Secured Claims), Class 3 (RBL Claims), Class 7 (General Unsecured Claims), and Class 8 (Intercompany Claims), and Interests in Class 9 (Existing Holdings Interests) and Class 11 (Intercompany Interests) are unimpaired under the Plan, and therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  While the holders of Interests in Class 10 (Existing Energy Inc. Interests) are impaired under the Plan, such holders are proponents of the Plan and are presumed to have accepted the Plan.  Finally, parties to certain of the Debtors' executory contracts and unexpired leases may not have Claims pending the disposition of their contracts or leases by assumption or rejection under the Plan.  Such parties nevertheless will be provided with this Combined Hearing Notice, and will be separately notified of the projected disposition of their contracts and/or lease.  As explained above, the Voting Agent will provide you, free of charge, with copies of the Plan, the Disclosure Statement, and the Combined Hearing Notice.

**Notice Regarding Certain Release,
Exculpation, and Injunction Provisions in Plan**

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

**Section 10.5    Injunction against Interference with the Plan**

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date, *provided*, that the foregoing shall not enjoin any Restructuring Support Party from exercising any of its rights or remedies under the Restructuring Support Agreement in accordance with the terms thereof.**

**Section 10.6    Plan Injunction**

**(a)        Except as otherwise provided in the Plan, in the Plan Documents, or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any**

property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, and the Plan Documents, to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan and the Plan Documents; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan and the Plan Documents; *provided, further*, that nothing contained in the Plan shall enjoin any Restructuring Support Party from exercising any of its rights or remedies under the Restructuring Support Agreement in accordance with the terms thereof.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.6 of the Plan.

**Section 10.7**   **Releases**

(a)     *RELEASES BY THE DEBTORS*.  AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE PLAN DOCUMENTS, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE PLAN DOCUMENTS, OR IN THE CONFIRMATION ORDER, THE RELEASED PARTIES ARE DEEMED EXPRESSLY, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED, ACQUITTED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, PREDECESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS OR ENTITIES THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN,

FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE (COLLECTIVELY, THE "RELEASED CLAIMS") THAT THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON OR ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM OR IN CONNECTION WITH, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE DEBTORS' RESTRUCTURING EFFORTS, THE NEGOTIATION, FORMULATION OR PREPARATION OF ANY TRANSACTIONS OR DOCUMENTS IN CONNECTION THEREWITH, THE DEBTORS' INTERCOMPANY TRANSACTIONS, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR APPLICABLE LAW, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AND ANY OTHER TRANSACTION OR ARRANGEMENT BETWEEN ANY DEBTOR, REORGANIZED DEBTOR, OR ESTATE AND ANY RELEASED PARTY (INCLUDING, WITHOUT LIMITATION, THE PREPETITION RBL CREDIT AGREEMENT, THE PREPETITION FIRST LIEN TERM LOAN AGREEMENT, THE PREPETITION FLLO CREDIT AGREEMENT, THE PREPETITION SECOND LIEN TERM LOAN AGREEMENT, AND THE PREPETITION SPONSOR SECOND LIEN TERM LOAN AGREEMENT), THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE RESTRUCTURING TRANSACTIONS, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE ASSET PURCHASE TRANSACTION, THE PURCHASE AGREEMENT, AND THE PLAN AND RELATED AGREEMENTS, INSTRUMENTS, TERM SHEETS AND OTHER DOCUMENTS (INCLUDING THE PLAN DOCUMENTS), THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, THE BACKSTOP COMMITMENT AGREEMENT, OR THE RIGHTS OFFERING, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR ARISING ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING, IN EACH CASE OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT, AS DETERMINED BY A FINAL ORDER.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER,

SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, (III) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

(b)     *RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.*  AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE PLAN DOCUMENTS, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE PLAN DOCUMENTS, OR IN THE CONFIRMATION ORDER, THE RELEASED PARTIES ARE DEEMED EXPRESSLY, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER RELEASED ACQUITTED AND DISCHARGED BY THE (I) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO VOTE TO ACCEPT THE PLAN, (II) HOLDERS OF CLAIMS OR INTERESTS THAT ARE UNIMPAIRED UNDER THE PLAN, WHERE THE APPLICABLE CLAIMS OR INTERESTS HAVE BEEN FULLY PAID OR OTHERWISE SATISFIED IN ACCORDANCE WITH THE PLAN, (III) HOLDERS OF CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN WAS SOLICITED BUT WHO DID NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN AND DID NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN, (IV) HOLDERS OF CLAIMS OR INTERESTS WHO VOTED TO REJECT THE PLAN BUT DID NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN THE PLAN, (V) THOSE HOLDERS OF CLAIMS OR INTERESTS WHO ARE UNIMPAIRED UNDER THE PLAN AND DO NOT TIMELY OBJECT TO THE RELEASES SET FORTH IN THE PLAN, (VI) THE PREPETITION RBL AGENT, (VII) THE PREPETITION FIRST LIEN TERM LOAN AGENT, (VIII) THE PREPETITION FLLO AGENT, (XI) THE PREPETITION SECOND LIEN TERM LOAN AGENT, (X) THE PREPETITION SPONSOR SECOND LIEN TERM LOAN AGENT, (XI) THE PREPETITION RBL LENDERS, (XII) THE PREPETITION FIRST LIEN TERM LENDERS, (XIII) THE PREPETITION FLLO LENDERS, (XIV) THE PREPETITION SECOND LIEN TERM LENDERS, (XV) THE PREPETITION SPONSOR SECOND LIEN TERM LENDERS, (XVI) THE DIP FACILITY AGENT, (XVII) THE DIP FACILITY LENDERS, (XVIII) THE CONSENTING SPONSOR, (XIX) RIVERSTONE V FW HOLDINGS SUB, LLC, AND (XX) FIELDWOOD MANAGEMENT LLC, AND WITH RESPECT TO EACH OF THE FOREGOING ENTITIES, SUCH ENTITIES' PREDECESSORS, SUCCESSORS,

ASSIGNS, SUBSIDIARIES, AFFILIATES, MANAGED ACCOUNTS AND FUNDS, AND ALL OF THEIR RESPECTIVE CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, SHAREHOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, SUBCONTRACTORS, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, INVESTMENT MANAGERS, INVESTMENT ADVISORS, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH ENTITIES' RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS, AND NOMINEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, AND ANY AND ALL OTHER PERSONS OR ENTITIES THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES (COLLECTIVELY, THE "<u>RELEASING PARTIES</u>"), FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS OR CAUSES OF ACTION, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS OR THEIR ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE THAT SUCH HOLDERS OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON OR ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM OR IN CONNECTION WITH, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE DEBTORS' RESTRUCTURING EFFORTS, THE NEGOTIATION, FORMULATION OR PREPARATION OF ANY TRANSACTIONS OR DOCUMENTS IN CONNECTION THEREWITH, THE DEBTORS' INTERCOMPANY TRANSACTIONS, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR APPLICABLE LAW, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AND ANY OTHER TRANSACTION OR ARRANGEMENT BETWEEN ANY DEBTOR, REORGANIZED DEBTOR, OR ESTATE AND ANY RELEASED PARTY (INCLUDING, WITHOUT LIMITATION, THE PREPETITION RBL CREDIT AGREEMENT, THE PREPETITION FIRST LIEN TERM LOAN AGREEMENT, THE PREPETITION FLLO CREDIT AGREEMENT, THE PREPETITION SECOND LIEN TERM LOAN AGREEMENT, AND THE PREPETITION SPONSOR SECOND LIEN TERM LOAN AGREEMENT), THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIM OR INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE RESTRUCTURING

**TRANSACTIONS, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE ASSET PURCHASE TRANSACTION, THE PURCHASE AGREEMENT, THE PLAN AND RELATED AGREEMENTS, INSTRUMENTS, TERM SHEETS AND OTHER DOCUMENTS (INCLUDING THE PLAN DOCUMENTS), THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, THE BACKSTOP COMMITMENT AGREEMENT, OR THE RIGHTS OFFERING, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE OR ARISING ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING, IN EACH CASE OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT, AS DETERMINED BY A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(b) OF THE PLAN (THE "<u>THIRD-PARTY RELEASE</u>"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

(c)     *Release of Liens.*  **Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, including the Exit LC Facility Documents, the Exit First Lien Documents, the Exit Second Lien Documents, and the Apache Decommissioning Agreement Amendment, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  In addition and for the avoidance of doubt, on the Effective Date, all of Apache's mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates of the Debtors or Reorganized Debtors shall be fully released and discharged, except for (i) any liens on property in The Fieldwood Decommissioning Trust A,**

a Delaware statutory trust, (ii) the "Recharacterization Mortgages" as defined in the Decommissioning Agreement dated September 30, 2013 between Apache, Fieldwood Energy LLC and GOM Shelf LLC, and (iii) any other mortgages, deeds of trust, Liens, pledges, or other security interests expressly preserved in the Apache Decommissioning Agreement Amendment.

**Section 10.8**     **Exculpation**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, INTEREST, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LOSS, REMEDY, OR LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE EXIT LC CREDIT AGREEMENT, THE EXIT FIRST LIEN CREDIT AGREEMENT, THE EXIT SECOND LIEN CREDIT AGREEMENT, THE DIP FACILITY LOAN AGREEMENT, THE NEW BY-LAWS, THE MANAGEMENT INCENTIVE PLAN, THE BACKSTOP COMMITMENT AGREEMENT, THE DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TRANSACTIONS, THE ASSET PURCHASE TRANSACTION, THE PURCHASE AGREEMENT, AND THE PLAN (INCLUDING THE PLAN DOCUMENTS), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE CONDUCTING OF THE RIGHTS OFFERING; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT IS A CRIMINAL ACT OR CONSTITUTES INTENTIONAL FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS, AND ATTORNEYS HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**Section 10.9    Injunction Related to Releases and Exculpation**

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan.**

**Relevant Definitions Related to Release and Exculpation Provisions:**

"**Exculpated Parties**" means, collectively, and in each case in their capacities as such during the Chapter 11 Cases: (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Disbursing Agent, (iv) the Restructuring Support Parties, (v) the Exit First Lien Term Loan Agent, (vi) the Exit First Lien Term Loan Lenders, (vii) the Exit Second Lien Term Loan Agent, (viii) the Exit Second Lien Term Loan Lenders, (ix) the Exit LC Facility Agent, (x) the Exit LC Facility Lenders, (xi) the DIP Facility Agent, (xii) the DIP Facility Lenders and (xiii) the Backstop Parties, and in respect to the entities referenced in clauses (i) through (xiii) hereof, such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, and all of their respective current and former officers and directors, principals, shareholders (regardless of whether such interests are held directly or indirectly), members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, investment managers, investment advisors, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

"**Released Parties**" means, collectively, and in each case in their capacities as such: (i) the Debtors; (ii) the Debtors' other non-Debtor affiliates; (iii) the Restructuring Support Parties; (iv) the Backstop Parties; (v) the Prepetition RBL Lenders; (vi) the Prepetition RBL Agent; (vii) the Prepetition First Lien Term Lenders; (viii) the Prepetition First Lien Term Loan Agent; (ix) the Prepetition FLLO Lenders; (x) the Prepetition FLLO Agent; (xi) the Prepetition Sponsor Second Lien Term Lenders; (xii) the Prepetition Sponsor Second Lien Term Loan Agent; (xiii) the Prepetition Second Lien Term Lenders; (xiv) the Prepetition Second Lien Term Loan Agent; (xv) the DIP Facility Lenders; (xvi) the DIP Facility Agent; (xvii) Riverstone V FW Holdings Sub, LLC; and (xviii) Fieldwood Management LLC; and with respect to each of the foregoing entities, such entities' predecessors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, and all of their respective current and former officers and directors, principals, shareholders (regardless of whether such interests are held directly or indirectly), members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, investment managers, investment advisors, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities; *provided*, that any holder of a Claim or Interest that opts out of granting the releases set forth in the Plan shall not be included in the definition of "Released Parties."

14

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## Section 341(a) Meeting

11.     A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") has been deferred.  **The Section 341(a) Meeting will not be convened if the Plan is confirmed by April 19, 2018.**  If the Section 341(a) Meeting will be convened, the Debtors will file, serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at http://cases.primeclerk.com/fieldwood not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

Dated: Houston, Texas
      February 16, 2018             BY ORDER OF THE COURT

                                */s/ Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (*pro hac vice* pending)
Ray C. Schrock, P.C. (*pro hac vice* pending)
Jessica Liou (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
Email:  Ray.Schrock@weil.com
Email:  Jessica.Liou@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on February 16, 2018, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

　　　　　　　　　　　　　　　　　　　　 */s/ Alfredo R. Pérez*
　　　　　　　　　　　　　　　　　　　　 Alfredo R. Pérez