# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | Case No. 18-30648 (DRJ) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

## APPLICATION OF DEBTORS' PURSUANT TO 11 U.S.C. § 327(a) AND 328 AND FED. R. BANKR. P. 2014(a) AND 2016 FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF OPPORTUNE LLP AS FINANCIAL ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 7 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 15, 2018 AT 11 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400 OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

Fieldwood Energy LLC ("**Fieldwood Energy**") and its debtor affiliates in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"**Debtors**"), respectfully represent as follows in support of this Application (this "**Application**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**Relief Requested**

1.      Pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), the Debtors request authorization to retain and employ Opportune LLP ("**Opportune**") as financial advisor for the Debtors, effective *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions of that certain engagement letter, dated as of October 26, 2017 (the "**Engagement Letter**").

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**"), to which the Engagement Letter is annexed as **Exhibit 1**.  In support of this Application, the Debtors submit the *Declaration of Scott Anchin*, a Managing Director of Opportune (the "**Anchin Declaration**"), which is attached hereto as **Exhibit B** and incorporated herein.

**Jurisdiction**

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

4.      On February 15, 2018 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or

statutory committee of creditors has been appointed in these chapter 11 cases.  The Debtors chapter 11 cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Bankruptcy Local Rules.

5.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of G.M. McCarroll in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (D.I. 42) (the "**First Day Declaration**").

### Opportune's Qualifications

6.      The Debtors have determined that the services of Opportune are necessary to assist the Debtors in their reorganization.  Opportune is well qualified to provide financial advisory services in light of its knowledge of the Debtors and the industry in which the Debtors operate, and its experience in providing financial and restructuring advisory services in large, complex chapter 11 cases.  Opportune performs an array of restructuring advisory, financial, tax, and consulting services for companies throughout the oil and gas industry and has an intimate understanding of the economic, regulatory, operational, strategic, and financial factors that drive the oil and gas business and related businesses.  This expertise ideally positions Opportune to advise the Debtors' management and other professionals in connection with the Debtors' operations and to assist with the myriad of issues that may arise in these chapter 11 cases.

7.      Opportune specializes in turnaround consulting, operational due diligence, complex financial reporting, creditor advisory services, tax advisory services, and financial and operational restructuring, among other things.  The Debtors understand that Opportune has a particular expertise in the oil and gas industry and geographies in which the Debtors operate. Opportune's prior experience includes a wide range of activities and services targeted at crisis management, restructuring, stabilizing, and improving a company's financial position, including,

among others: providing executive leadership to financially distressed companies; developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.  In the past, Opportune has provided interim management, restructuring advisory services and/or strategic advice to companies of similar size to the Debtors, as well as creditors, investors and other parties in interest in matters such as, among others: (i) in the chapter 11 cases of Vanguard Natural Resources LLC, Chaparral Energy, Inc., Energy XXI Ltd., Swift Energy Company, Samson Resources Corporation, Duer Wagner III Oil & Gas LP, BPZ Resources, Inc., Endeavour International Corporation, Global Geophysical Services, Inc., ATP Oil & Gas Corporation, GMX Resources Inc., Cano Petroleum Inc., Crusader Energy Group, Inc. and Edge Petroleum Corporation; and (ii) restructurings involving each of JP Morgan, Bank of America, Citibank, Union Bank, Wells Fargo Bank, N.A., GSO Capital Partners, Third Avenue Management, Bank of Montreal, Royal Bank of Canada and Bank of Scotland.  In addition, Opportune is familiar with the Debtors' businesses, financial affairs, and capital structure.

8.     For these reasons, the Debtors believe that Opportune is well qualified and uniquely suited to act as financial advisor to the Debtors.

### Services to be Provided[2]

9.     Prior to the Petition Date, the Debtors, Weil, Gotshal & Manges LLP, and Opportune entered into the Engagement Letter, which governs the relationship among them.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and

---

[2] The summary of the Engagement Letter contained in this Application is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Proposed Order, shall control.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Letter.

Opportune and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Subject to further order of the Court, Opportune may provide the services described in the Engagement Letter as Opportune and the Debtors shall deem appropriate and feasible to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following (the "**Services**"):

General Reorganization Efforts:

    (i)    Assistance with the preparation of financial and other information for distribution to stakeholders and others, including, but not limited to: short term cash flow projections and budgets, mid/long term business case, cash receipts and disbursement analysis, and analysis of various asset and liability accounts;

    (ii)    Analysis of proposed transactions;

    (iii)    Assistance with the identification and implementation of short-term cash management procedures;

    (iv)    Assistance to management, counsel, and other advisors focused on the coordination of resources related to ongoing reorganization efforts;

    (v)    Attendance at meetings and assistance in discussions with potential investors, banks, other secured lenders, any committees, and other stakeholders and assistance with respect to due diligence requests from the same; and

    (vi)    Other general financial and restructuring advisory services as mutually agreed by the Company and Opportune.

Bankruptcy Advisory Services:

    (i)    Assistance in the preparation of bankruptcy documents, including "first day" motions;

    (ii)    Assistance in the preparation of financial related disclosures required by the Bankruptcy Court, including but not limited to Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

    (iii)    Assistance in the preparation of financial information including cash flow forecasts, long term business plans, and other key information;

    (iv)    Assistance with respect to mortgages and lien perfections;

(v)     Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(vi)    Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(vii)   Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in such chapter 11 proceeding(s), including information contained in the plan and disclosure statement;

(viii)  Ongoing support with respect to managing the day-to-day requirements of the bankruptcy process; and

(ix)    Rendering such other general financial, restructuring, and business consulting or such other assistance management or counsel may deem necessary consistent with the role of a financial and operational advisor to the extent that it would not be duplicative of services provided by other professionals in such proceeding.

10.     As a result of its work with the Debtors, Opportune has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information.  Having worked with the Debtors' management and their other advisors, Opportune has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly, the Debtors believe Opportune is well-qualified to represent them in a cost effective, efficient, and timely manner, and the Debtors submit that the employment and retention of Opportune is in the best interests of the Debtors, their creditors, and all parties in interest.

**Professional Compensation**

11.     As consideration for the Services described above, Opportune shall be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its

customary billing practices, as set forth in the Engagement Letter (the "**Fee and Expense Structure**").

12.     Opportune's current and standard hourly billing rates for its personnel, based on the position held by such Opportune personnel, is as follows:

| Position | Hourly Rate |
|---|---|
| Partner | $865 |
| Managing Director | $745 |
| Director | $630 |
| Manager | $560 |
| Senior Consultant | $435 |
| Consultant | $350 |
| Admin / Paraprofessional | $225 |

13.     Pursuant to the Engagement Letter, the Debtors will also reimburse Opportune for all reasonable and documented out-of-pocket expenses incurred in connection with Opportune's services, including parking, courier, overtime meals, document reproduction, and certain travel expenses.

14.     Opportune received an initial retainer of $250,000 (the "**Retainer**") on November 1, 2017 from the Debtors related to its financial advisory work.  Pursuant to the Engagement Letter, the Retainer shall be carried by Opportune and credited against any amounts due at the termination of the engagement, with any remaining amount of the Retainer returned to the Debtors.  According to Opportune's books and records, during the 90-day period prior to the Petition Date, Opportune received approximately $1,278,682.00 from the Debtors for professional services performed and expenses incurred.  As of the Petition Date, no amounts were due or outstanding under the Engagement Letter.

15.     The Debtors understand that Opportune intends to apply for compensation for the Services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Guidelines for Reviewing Applications for Compensation filed under 11 U.S.C. § 330*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**"), and any other applicable procedures and orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth through the Fee and Expense Structure.

16.     The Debtors further understand that Opportune will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of the Services in these chapter 11 cases.  The Debtors respectfully request that Opportune's professionals only be required to maintain records, in summary format, of the Services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services in one-half hour (.5) increments, and the identity of the professionals who provided those services.  Opportune will present such records to the Court in its fee applications.  To the extent that Opportune would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

17.     The Fee and Expense Structure outlined above is consistent with and typical of compensation arrangements entered into by Opportune and other comparable firms that render similar services under similar circumstances.  The Debtors believe that the Fee and

Expense Structure is reasonable, market-based, and designed to compensate Opportune fairly for its services and to cover fixed and routine overhead expenses.

18.     The Debtors request that any balance of the Retainer will constitute an evergreen retainer as security for postpetition services and expenses.  An evergreen retainer is appropriate in these chapter 11 cases.  First, evergreen retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[I]t is not disputed that the taking of evergreen retainers is a practice now common in the marketplace. . . . [T]he practice in this district has been engaged in since at least the early 1990's.").  Second, Opportune and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length.  As such, the Debtors respectfully request that approval of the proposed evergreen retainer is warranted.

## Indemnification

19.     The Engagement Letter contains standard indemnification language with respect to Opportune's financial advisory services, including, an agreement by the Debtors to indemnify Opportune, and their (as applicable) partners, employees, managers, principals, agents, affiliates, independent contractors, insurers (collectively, the "**Indemnified Persons**") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the Engagement or this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses).  The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, willful misconduct or fraudulent acts of Opportune.

20.     The Debtors and Opportune believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for Opportune and comparable firms providing financial advisory services.  The terms and conditions of the indemnification provisions were negotiated by the Debtors and Opportune at arm's length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Opportune's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require Opportune's services to successfully reorganize.  The Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter.

### No Duplication of Services

21.     The Debtors believe that the Services provided by Opportune will complement, and not duplicate, the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, Opportune will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

### Opportune's Disinterestedness

22.     To the best of the Debtors' knowledge, information and belief, and except to the extent disclosed herein and in the Anchin Declaration, Opportune (a) is a "disinterested person" within the meaning of sections 101(14) and 1107(b) of the Bankruptcy Code, (b) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

23.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Opportune's retention are discovered or arise, Debtors are advised that Opportune will use reasonable efforts to file promptly a supplemental declaration.   In addition, the Debtors are informed that Opportune will not share any compensation to be paid by the Debtors in connection with Services to be performed after the Petition Date with any other person, other than principals and employees of Opportune, to the extent required by section 504 of the Bankruptcy Code.

**Relief Requested Should be Granted**

**A.     The Debtors Should be Permitted to Retain and Employ Opportune on the Terms in the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

24.     The Debtors submit that the retention of Opportune under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers debtors, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under" the Bankruptcy Code.   11 U.S.C. § 327(a).   Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    a.  Is not a creditor, an equity security holder, or an insider;

    b.  Is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c.  Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).  Further, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). For the reasons set forth in the Anchin Declaration, the exhibits thereto and as otherwise addressed herein, the Debtors believe that Opportune is a disinterested person within the meaning of section 101(14) of the Bankruptcy Code.

25. Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Opportune's prepetition relationship with the Debtors therefore does not preclude Opportune's retention as the Debtors' postpetition financial advisor.

26. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person under section 327 "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of Opportune's retention as described herein are reasonable. The terms are substantially similar to those that Opportune applies to its other bankruptcy and nonbankruptcy clients for engagements of this size and character. In addition, the terms are similar to those approved by courts in this district and others. *See, e.g.*, *In re Vanguard Nat. Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. Mar. 1, 2017); *In re Energy XXI Ltd*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. June 7, 2016); *In re ATP Oil & Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Sept. 20, 2012).

27.     Because the Debtors will require substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to employ Opportune to serve as its financial advisor on the terms and conditions set forth herein.  Additionally, the Debtors request that the requirements of the *Uniform Texas Procedures for Complex Chapter 11 Cases* (the "**Complex Rules**") and the U.S. Trustee Guidelines be tailored to appropriately reflect Opportune's engagement and its Fee and Expense Structure.  Opportune has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate basis.  As discussed above, Opportune's restructuring personnel will keep summary time records in one-half hour (.5) increments describing their daily activities and the identity of the persons who performed such tasks.  As such, the Debtors request modification of the requirements of the Complex Rules.

### B.     The Indemnification Terms of the Engagement Letter is Appropriate

28.     The indemnification provisions in the Engagement Letters, as modified by the Proposed Order attached hereto, were fully negotiated between the Debtors and Opportune. The Debtors and Opportune believe that the indemnification provisions in the Engagement Letter are customary and reasonable for financial advisory engagements both out of court and in chapter 11 cases.  Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases. *See, e.g.*, *In re Vanguard Nat. Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. Mar. 1, 2017); *In re Energy XXI Ltd*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. June 7, 2016); *In re BPZ Resources, Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Apr. 2, 2015).

C.     **It is Appropriate for the Debtors to Retain Opportune *Nunc Pro Tunc* to the Petition Date**

29.     The Debtors also believe that employment of Opportune effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these chapter 11 cases. Opportune has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions.  *See, e.g.*, *In re Triangle Chems., Inc.*, 697 F.2d 1280 (5th Cir. 1983); *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.") (collecting cases).  Furthermore, Bankruptcy Local Rule 2014-1(b)(1) provides that an application for approval of employment made within 30 days of the commencement of the provision of services is deemed contemporaneous.  Nonetheless, the Debtors are requesting *nunc pro tunc* approval out of an abundance of caution.

## Notice

30.     No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  Notice of this Application will be provided to (i) the Office of the United States Trustee for the Southern District of Texas (Attn: Hector Duran, Esq. and Stephen Statham, Esq.); (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq., Darren S. Klein, Esq., and Natasha Tsiouris, Esq.), counsel to Cortland Capital Market Services LLC, agent under the Prepetition Second Lien Term Loan Facility; (iv) Vinson & Elkins LLP, 666 Fifth Avenue, 26th Floor, New York, New York 10103 (Attn: David S. Meyer, Esq. and Jessica Peet, Esq.), counsel to Riverstone Holdings LLC and certain of its affiliated funds; (v) O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York 10036 (Attn: George Davis, Esq., David Johnson, Esq., and

Daniel Shamah, Esq.), counsel to certain lenders under that Prepetition First Lien Term Loan Facility; (vi) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Ana Alfonso, Esq.), counsel to Citibank, N.A., agent under the Prepetition Reserves-Based Lending Facility; (vii) Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: William A. Wood III, Esq.), counsel to Noble Energy, Inc.; (viii) Andrews Kurth Kenyon LLP, 600 Travis, Suite 4200, Houston, Texas 77002 (Attn: Robin Russell, Esq.), counsel to Apache Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the Southern District of Texas; and (xi) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002.

31.     In addition to the foregoing, notice of this Application and any order entered hereon will be served on all parties required by Bankruptcy Local Rule 9013-1(d) (collectively, with the parties listed in the preceding paragraph, the "**Notice Parties**").  Based on the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## No Previous Request

32.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 22, 2018
       Houston, Texas

FIELDWOOD ENERGY LLC
(for itself and on behalf of its affiliates as
Debtors and Debtors in Possession)

 /s/  G.M. McCarroll
NAME:  G.M. McCarroll
TITLE:  President and Chief Executive Officer

16

**<u>Certificate of Service</u>**

I hereby certify that on February 22, 2018, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.


   */s/  Alfredo R. Pérez*             
Alfredo R. Pérez

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 18-30648 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | **Re:  Docket No. ___** |

**ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF OPPORTUNE LLP AS FINANCIAL ADVISOR
FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the Application, dated February 22, 2018 (the "**Application**"),[2] of

Fieldwood Energy LLC ("**Fieldwood Energy**") and its debtor affiliates, as debtors and debtors

in possession (collectively, the "**Debtors**"), for authorization to retain and employ Opportune

LLP ("**Opportune**") as financial advisor for the Debtors, effective *nunc pro tunc* to the Petition

Date, in accordance with the terms and conditions of the Engagement Letter attached hereto as

**Exhibit 1**, as more fully set forth in the Application; and upon consideration of the Anchin

Declaration and the First Day Declaration; and the Court having jurisdiction to consider the

Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the

*Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012)

(Hinojosa, C.J.); and consideration of the Application and the requested relief being a core

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application or the Engagement Letter, as applicable.

proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application; and the Court having held a hearing on the Application; and all objections, if any, to the Application have been withdrawn, resolved, or overruled; and the Court having found that Opportune is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and that the terms and conditions of Opportune's employment set forth in the Engagement Letter, as modified herein, are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1 to retain and employ Opportune as their financial advisor in these chapter 11 cases *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Application and the Engagement Letter, except as provided by this Order.

3.      The terms of the Engagement Letter are approved in all respects except as explicitly limited or modified herein.

4.      Notwithstanding anything to the contrary in the Engagement Letter, the indemnity provisions of the Engagement Letter are modified as follows:

a.  Opportune shall not be entitled to indemnification, contribution or reimbursement for services other than those described in the Engagement Letter and the Application, unless such services and indemnification therefor are approved by the Court;

b.  The Debtors shall have no obligation to indemnify Opportune, or provide contribution or reimbursement to Opportune, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Opportune's bad faith, self-dealing, breach of fiduciary duty (if any such duty exists), gross negligence or willful misconduct; or (ii) judicially determined (the determination having become final), based on a breach of Opportune's contractual obligations to the Debtor; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by the Court, after notice and a hearing to be a claim or expense for which Opportune should not receive indemnity, contribution or reimbursement under the terms of Opportune's retention by the Debtors pursuant to the terms of the Engagement Letter and Application, as modified by this Order; and

c.  If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, Opportune believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order) and Application, including without limitation the advancement of defense costs, Opportune must file an application therefor in this Court, and the Debtors may not pay any such amounts to Opportune before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Opportune for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Opportune.  All parties in interest shall retain the right to object to any demand by Opportune for indemnification, contribution or reimbursement.

5.      Opportune is authorized to perform any Services for the Debtors that are necessary or appropriate in connection with these chapter 11 cases.

6.      Opportune shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

7.      Opportune shall be compensated for its Services and reimbursed for related expenses in accordance with the terms and conditions of the Fee and Expense Structure set forth in the Engagement Letter, as set forth in the Application and the procedures provided in sections 330 and 331 of the Bankruptcy Code, and in accordance with applicable Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable orders of this Court.

8.      Opportune shall file fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court; *provided*, *however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Complex Rules are hereby modified such that Opportune's professionals shall be required to maintain summary records in one-half hour (.5) increments describing each professional's tasks on a daily basis in support of each fee application, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

9.      Opportune is authorized to apply the Retainer to satisfy any unbilled or other remaining prepetition fees and expenses Opportune becomes aware of during its ordinary course billing review and reconciliation.  The remaining balance of the Retainer held by Opportune shall be treated as an evergreen retainer and be held by Opportune as security throughout these chapter 11 cases until Opportune's fees and expenses are fully paid.

10.     To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

11.     The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

ZZZ

## **Exhibit 1**

**Engagement Letter**



October 26, 2017

Weil, Gotshal & Manges LLP
Attn: Matthew S. Barr
767 Fifth Avenue
New York, NY 10153

Re: Fieldwood Energy LLC

Dear Mr. Barr:

This engagement letter (the "Engagement Letter"), together with the attached Appendix A: "Terms and Conditions", sets forth our entire understanding regarding (i) the engagement (the "Engagement") between Opportune LLP ("Opportune") and Weil, Gotshal & Manges LLP ("Weil") in its capacity as counsel to Fieldwood Energy LLC and its subsidiaries and affiliates (collectively the "Company"), for the purpose of Opportune providing services to the Company consistent with the scope of such services described herein (the "Services") and (ii) the basis of compensation for those Services. Upon execution of this Engagement Letter by each of the parties below and receipt of the retainer described below, this Engagement Letter will constitute a binding agreement between the Company and Opportune (the "Agreement").

## 1. Scope of Services

Opportune will provide the following financial advisory Services as requested and directed by the Company's senior management and/or Board of Directors (and in coordination with the Company's counsel and other advisors as applicable), that may include, but are not limited to:

    a) <u>General Reorganization Efforts</u>

        i.   Assistance with the preparation of financial and other information for distribution to stakeholders and others, including, but not limited to: short term cash flow projections and budgets, mid/long term business case, cash receipts and disbursement analysis, and analysis of various asset and liability accounts;

        ii.   Analysis of proposed transactions;

        iii.   Assistance with the identification and implementation of short-term cash management procedures;

        iv.   Assistance to management, counsel, and other advisors focused on the coordination of resources related to ongoing reorganization efforts;

        v.   Attendance at meetings and assistance in discussions with potential investors, banks, other secured lenders, any committees, and other stakeholders and assistance with respect to due diligence requests from the same; and

        vi.   Other general financial and restructuring advisory services as mutually agreed by the Company and Opportune.

<u>Bankruptcy Advisory Services:</u> In the event the Company seeks to file for chapter 11 bankruptcy protection, Opportune will assist in the preparation for such filing and advise the

711 Louisiana Street, Suite 3100, Houston, Texas 77002
Office: 713.490.5050 Fax: 713.490.0355
www.opportune.com

Fieldwood Energy LLC
October 26, 2017
Page 2 of 10

Company during its chapter 11 proceedings in respect of the following, which may include, as applicable, certain services contemplated in the General Reorganization Efforts above:

b) Assistance in the preparation of bankruptcy documents, including "first day" motions;

c) Assistance in the preparation of financial related disclosures required by the Bankruptcy Court (the "Court"), including but not limited to Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

d) Assistance in the preparation of financial information including cash flow forecasts, long term business plans, and other key information;

e) Assistance with respect to mortgages and lien perfections;

f) Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

g) Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

h) Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in such chapter 11 proceeding(s), including information contained in the plan and disclosure statement;

i) Ongoing support with respect to managing the day-to-day requirements of the bankruptcy process; and

j) Rendering such other general financial, restructuring, and business consulting or such other assistance management or counsel may deem necessary consistent with the role of a financial and operational advisor to the extent that it would not be duplicative of services provided by other professionals in such proceeding.

Access to Information. In connection with this Engagement, Opportune shall have access to all Company information that Opportune and the Company deem appropriate. Additionally, the Company will provide reasonable access to the Company's managers, employees, accountants, counsel and other representatives (collectively the "Representatives") necessary to perform the Services as outlined in this Engagement Letter. It is understood that Opportune is relying solely upon the information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. All confidential information concerning the Company that is given to Opportune will be used solely in the course of performance of the Services outlined in this Engagement Letter. Except as required by law, such confidential information will not be disclosed to a third party without the Company's prior written consent.

Projections; Reliance; Limitation of Duties. The Company understands that the Services to be rendered may include the preparation of projections and other forward-looking statements for use in evaluating potential restructuring or strategic alternatives, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, Opportune will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Opportune makes no representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented to the Board will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, Opportune assumes

Fieldwood Energy LLC
October 26, 2017
Page 3 of 10

no responsibility for the selection of any restructuring proposal or strategic alternative formulated and presented to the Board of Directors.

2. **Compensation**

(a) Opportune will be paid by the Company for its Services at the current hourly billing rates for its personnel, based on the position held by such Opportune personnel, as follows:

|       |                          |           |
|-------|--------------------------|-----------|
| i.    | Partners                 | $865/hr.  |
| ii.   | Managing Directors       | $745/hr.  |
| iii.  | Directors                | $630/hr.  |
| iv.   | Managers                 | $560/hr.  |
| v.    | Senior Consultants       | $435/hr.  |
| vi.   | Consultants              | $350/hr.  |
| vii.  | Admin / Paraprofessionals| $225/hr.  |

(b) In addition to our fees, reasonable and documented out-of-pocket expenses (e.g., parking, travel, courier, overtime meals, copying, and postage) incurred directly in connection with the Services will be included on each invoice.

(c) After execution of this Agreement, the Company shall promptly remit to Opportune a retainer in the amount of $250,000 (the "Retainer"). This amount shall be carried by Opportune (but not in a separate bank account) and credited against any amounts due at the termination of this Engagement, and any remaining balance of the Retainer promptly returned to the Company upon the satisfaction of all obligations hereunder.

(d) Opportune will bill for its fees and out-of-pocket expenses on a bi-weekly basis and the Company agrees to remit in full the payment of such fees and expenses promptly upon the receipt of any bill or invoice submitted by or on behalf of Opportune.

(e) For the avoidance of doubt, all fees and expenses contemplated herein shall be paid by the Company and not by Weil, and in no event shall Weil be liable for any payment or obligations hereunder.

In the event that the Company commences a proceeding under the Bankruptcy Code, the Company agrees that it will promptly seek the Court's approval of this Engagement. The application to the Court for such retention, proposed order, and other supporting documents (collectively, the "Retention Application") submitted to the Bankruptcy Court seeking its approval of this Engagement must be reasonably satisfactory to Opportune. In addition to Opportune's other rights or remedies hereunder, Opportune may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of Opportune is not issued by the Bankruptcy Court on or before ninety (90) days from the date of the commencement of any bankruptcy case by the Company on the terms and conditions set forth herein or on such other terms and conditions as are reasonably satisfactory to Opportune; or (b) the Application is denied by the Bankruptcy Court.  In such event, the Company hereby agrees to withdraw or amend, promptly upon Opportune's request, any Application filed or to be filed with the Bankruptcy Court to approve Opportune's Services in the bankruptcy proceeding.  The term "Bankruptcy Court" shall mean the United States Bankruptcy Court with which the Company has filed a bankruptcy petition. Payment of Opportune's fees and expenses will be in accordance with the procedures set forth by the applicable court orders, bankruptcy and local rules and/or U.S. Trustee Guidelines in the jurisdiction in which the bankruptcy is filed.

Fieldwood Energy LLC
October 26, 2017
Page 4 of 10

3. **IRS**

In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Opportune will provide the following disclosure on all communications with Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or matter addressed herein."

4. **Other Matters**

The General Business Terms & Conditions applicable to this Engagement are attached hereto as Appendix A and are incorporated herein by reference. Capitalized terms used in the attached General Business Terms & Conditions and not defined therein shall have the meanings given to such terms in this Engagement Letter. For the purposes of the attached General Business Terms & Conditions, the "Company" shall mean Fieldwood Energy LLC and its affiliates and subsidiaries, and "Engagement Agreement" shall mean this Engagement Letter together with Appendix A and all other appendices hereto.

5. **Confirmed Agreement**

We are ready to begin our work immediately upon our receipt of the signed Engagement Letter. Please confirm the agreement to the Engagement Letter by signing below and returning to our office at your earliest convenience. Again, we look forward to working with you.

Fieldwood Energy LLC
October 26, 2017
Page 5 of 10

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it at your earliest convenience.

Very truly yours,

David Baggett
Managing Partner
Opportune LLP

Accepted by: Weil, Gotshal & Manges LLP

By: MATTHEW BARR

Title: Partner

Date: 10/27/17

Acknowledged by: Fieldwood Energy LLC

By:

Title: CEO

Date: 10/27/17

Fieldwood Energy LLC
October 26, 2017
Page 6 of 10

## Appendix A:  Terms and Conditions

**Terms and Conditions**

The following are the terms and conditions (the "Terms and Conditions") on which Opportune will provide the services (the "Services") set forth in the attached engagement letter (the "Engagement Letter").  Together, the Terms and Conditions and the Engagement Letter are referred to as the "Contract," which forms the entire agreement between Opportune and the Company.  Opportune and the Company may be collectively referred to herein as "Parties" and individually as "Party".  Defined Terms contained in the Engagement Letter shall apply to these Terms and Conditions unless otherwise stated.

**Fees**

1. Opportune's invoices are payable upon receipt.  If payment of any invoice is not received within thirty (30) days of the invoice date, Opportune shall be entitled, without prejudice to any other rights that it may have, to suspend provision of the Services until all amounts due are paid in full. Prior to any bankruptcy filing, all invoices must be paid in full.

2. Opportune has no responsibility to update any report, analysis or any other document relating to this Engagement for any events or circumstances occurring subsequent to the date of such report, analysis or other document.  Any such subsequent consultations or work shall be subject to arrangements at our then standard fees plus expenses.

3. In the event additional Services are requested, the Parties shall work together to memorialize any such agreement, including payment of reasonable and documented additional fees and a reasonable additional period to provide any additional Services.  Any variation to this Contract, including any variation to fees, Services, or time for performance of the Services, shall be set forth in a separate supplemental engagement letter executed by the Parties which shall form part of this Contract.

4. Opportune's performance of the Services is dependent upon the Company providing accurate and timely information and assistance as may be reasonably required from time to time.  The Company shall use reasonable skill, care and attention to ensure that all required information is provided on a timely basis and is accurate and complete. The Company shall notify Opportune if it subsequently learns that any information provided is incorrect, inaccurate or otherwise should not be relied upon. *The inability to supply Opportune with agreed upon information in a useable form within an amount of time reasonably required by us may increase fees and delay completion.  Additionally, in the event unforeseen complications are encountered which would significantly increase fees, Opportune would discuss these with the Company and await the Company's approval before proceeding.*

**Termination**

5. Any Party may terminate this Contract in the event that the other Party has breached any material provision of this Contract and such breach has not been cured within ten (10) days after receipt of written notice from the then non-breaching Party.  The Company may, in its sole discretion, terminate this Contract at any time by providing Opportune with ten (10) days' notice.

Fieldwood Energy LLC
October 26, 2017
Page 7 of 10

6. Upon termination of this Contract, each Party shall, upon written request from the other, return to the other all property and documentation of the other that is in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement in the Engagement, subject to our continuing confidentiality obligations hereunder.

7. The provisions included within "Fees", "Preservation of Confidential Information" and "Other Terms and Provisions" shall survive the termination or expiration of this Contract.

**Work Product and Report**

8. During the Engagement, Opportune may prepare certain reports, and any analysis will be based upon the information provided by and on behalf of the Company. Opportune assumes no responsibility and makes no representations with respect to the accuracy or completeness of any information provided by and on behalf of the Company. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by Opportune since the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

9. In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Opportune will provide the following disclosure on all communications with the Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or matter addressed herein."

10. Opportune is not a CPA firm, and any report or any results of our Services shall not constitute an Audit, Attestation, Valuation, Solvency Opinion or a Fairness Opinion or otherwise and may not be relied upon by the Company or any other party as such. Any advice given or report issued by Opportune is provided solely for the Company's use and benefit and only in connection with the Services that are provided. Furthermore, any analyses Opportune performs should not be taken to supplant any procedures that the Company should undertake in consideration of the matter contemplated in connection with this Engagement or any other past, present, or future transaction.

11. The Company expressly acknowledges that Opportune does not guarantee, warrant or otherwise provide assurance regarding the results of the Services.

**Preservation of Confidential Information**

12. No Party will disclose to any third party without the prior written consent of the other Party any confidential information (the "Information") which is received from the other Party for the purposes of providing or receiving the Services which if disclosed in tangible form is marked confidential or if disclosed otherwise is confirmed in writing as being confidential or, if disclosed in tangible form or otherwise, is manifestly confidential. The Parties agree that any Information received from the other Party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us.

Fieldwood Energy LLC
October 26, 2017
Page 8 of 10

13. These restrictions will not apply to any Information which: (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

14. Notwithstanding the foregoing, any Party will be entitled to disclose confidential information of the other (i) to our respective insurers or legal advisors, or (ii) to a third party to the extent that this is required, by any court of competent jurisdiction, or by a governmental or regulatory authority or where there is a legal right, duty or requirement to disclose, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than five (5) business days' notice in writing is first given to the other Party.

**Other Terms and Provisions**

15. Except in the event of Opportune's gross negligence, wilful misconduct or fraudulent acts, in no event shall Opportune be liable to the Company under this Contract under any legal theory for any consequential, indirect, lost profit or similar damages relating to or arising from our Services provided under this Contract. Moreover, in no event shall Opportune be liable to the Company (or any person claiming through either) under this Contract, under any legal theory, for any amount in excess of the total professional fees paid by the Company to Opportune for the immediate six (6) month period prior to the date the alleged liability occurred. The Company agrees, accepts and acknowledges that any legal proceedings arising from or in connection with this Agreement (including all amendments and engagements related thereto) must be commenced within one (1) year from the termination of this Agreement or conclusion of each particular engagement letter (whichever occurs first in time), and that no action or claim will be brought against any employee or subcontractor of Opportune.

16. The Company agrees that no action or claims will be brought against the Opportune or Opportune employees personally, except for the gross negligence, wilful misconduct, or fraudulent acts of Opportune or any Opportune employees.

17. The Company shall indemnify Opportune, and their (as applicable) partners, employees, managers, principals, agents, affiliates, independent contractors, insurers (collectively, the "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the Engagement or this Agreement (including but not limited to any Indemnified Person's reasonable counsel fees and expenses). The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, wilful misconduct or fraudulent acts of Opportune.

18. The Company accepts and acknowledges that Opportune has not made any warranties or guarantees, whether express or implied, with respect to the Services or the results that you may obtain as a result of the provision of the Services.

19. Except for the Company's payment obligations, neither of Opportune nor the Company will be liable to the other for any delay or failure to fulfil obligations caused by circumstances outside our reasonable control.

20. Nothing in this Agreement shall be interpreted as the Company having any obligation or liability to request Opportune's Services on any particular project or any minimum number of projects.

21. Without exception or qualification, the Parties agree that at no time during the term of this Agreement shall Opportune be considered an employee of the Company, but rather Opportune shall at all times be and remain an independent contractor of the Company. At no time shall Opportune hold itself out to any third party as an employee of the Company. Opportune shall not at any time have any authority to make or enter into any contract, agreement, warranty or representation on behalf of the Company or to create any obligation, express or implied, on behalf of the Company.

22. It is understood and agreed that any final report resulting from the Services shall remain the Company's property. To the extent that Opportune utilizes any of its property (including, without limitation, any hardware or software) in connection with the Services, such property shall remain the property of Opportune, and the Company shall not acquire any right or interest in such property. Opportune shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose Opportune's ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting Opportune's business (collectively, "Know-How") regardless of whether such Know-How is incorporated in any way in the final report.

23. Neither Party shall be liable to the other Party for special, indirect, consequential, exemplary and for punitive damages (collectively, "Consequential Damages"), and each Party hereto shall be responsible for and shall defend, indemnify and hold the other harmless from and against its own Consequential Damages resulting from or arising out of this Agreement, including, without limitation, loss of profit or business interruptions, howsoever, the same may be caused.

24. Opportune shall at all times during the Term comply with all applicable laws as well as the policies and procedures of the Company. Opportune shall not pay any commissions or fees or grant any rebates or other remuneration or gratuity to any person in connection with the business of the Company or its affiliated or subsidiary companies. Opportune shall not accept any rebates nor accept any commissions or fees in connection with the business of the Company or its affiliated or subsidiary companies.

25. Opportune shall not be liable to the Company for any delays or non-performance resulting from circumstances or causes beyond Opportune's reasonable control, including, but not limited to acts of God.

26. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect. Notwithstanding the foregoing, the Parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the Parties' intent to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

27. Neither Party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other Party (other than to such Party's affiliates or subsidiaries which shall not require such consent). This Agreement shall be binding upon and inure to the benefit of the Parties' respective successors and permitted assigns.

Fieldwood Energy LLC
October 26, 2017
Page 10 of 10

28. No change, modification, extension, renewal, ratification, waiver or rescission of this Agreement or of any of the provisions hereof shall be binding unless it is in writing and signed by both Parties hereto. Further, no waiver or forbearance by either Party hereto with respect to any right granted to such Party herein shall operate or be construed to be a waiver or forbearance of such Party's right to exercise such right in the future.

29. Notices regarding or required by this Agreement must be in writing and delivered to the Parties at the mailing addresses set forth below or to such other address as a party may designate in writing. Any notice required under this Agreement will be deemed effective upon delivery to the Party to whom it is addressed.

30. This Agreement constitutes the entire agreement between the Parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof.  This Contract may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

31. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Texas and the courts of the State of Texas shall have exclusive jurisdiction in relation to any claim arising out of this Contract. OPPORTUNE AND THE COMPANY HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS AGREEMENT.

## Exhibit B

**Anchin Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **Case No. 18-30648 (DRJ)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |
| | § | |

### DECLARATION OF SCOTT ANCHIN IN SUPPORT OF THE
### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
### THE RETENTION AND EMPLOYMENT OF OPPORTUNE LLP AS FINANCIAL
### ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

I, Scott Anchin, make this Declaration pursuant to 28 U.S.C. § 1746, and state:

1. I am a Managing Director of Opportune LLP ("**Opportune**"), an energy consulting services firm with offices in Houston, Dallas, Denver, London, New York City and Tulsa.

2. I submit this declaration on behalf of Opportune (this "**Declaration**") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Opportune LLP as Financial Advisor for the Debtors* Nunc Pro Tunc *to the Petition Date* (the "**Application**") on the terms and conditions set forth in the Application and that certain engagement letter, dated as of October 26, 2017 (the "**Engagement Letter**"), attached to the Debtors' Proposed Order[2] to the Application as **Exhibit 1**.  Except as otherwise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

indicated, I have personal knowledge of the matters set forth herein.  If called and sworn as a witness, I could and would testify competently to the matters set forth herein.

## Opportune's Qualifications

3.      Opportune is well qualified to provide financial advisory services in light of its knowledge of the Debtors and the industry in which the Debtors operate, and its experience in providing financial and restructuring advisory services in large, complex chapter 11 cases. Opportune performs an array of restructuring advisory, financial, tax, and consulting services for companies throughout the oil and gas industry and has an intimate understanding of the economic, regulatory, operational, strategic, and financial factors that drive the oil and gas business and related businesses.  This expertise ideally positions Opportune to advise the Debtors' management and other professionals in connection with the Debtors' operations and to assist with the myriad of issues that may arise in these chapter 11 cases.

4.      Opportune specializes in turnaround consulting, operational due diligence, complex financial reporting, creditor advisory services, tax advisory services, and financial and operational restructuring, among other things.  Opportune has a particular expertise in the oil and gas industry and geographies in which the Debtors operate.  Opportune's prior experience includes a wide range of activities and services targeted at crisis management, restructuring, stabilizing, and improving a company's financial position, including, among others: providing executive leadership to financially distressed companies; developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.  In the past, Opportune has provided interim management, restructuring advisory services and/or strategic

advice to companies of similar size to the Debtors, as well as creditors, investors and other parties in interest in matters such as, among others: (i) in the chapter 11 cases of Vanguard Natural Resources LLC, Chaparral Energy, Inc., Energy XXI Ltd., Swift Energy Company, Samson Resources Corporation, Duer Wagner III Oil & Gas LP, BPZ Resources, Inc., Endeavour International Corporation, Global Geophysical Services, Inc., ATP Oil & Gas Corporation, GMX Resources Inc., Cano Petroleum Inc., Crusader Energy Group, Inc. and Edge Petroleum Corporation; and (ii) restructurings involving each of JP Morgan, Bank of America, Citibank, Union Bank, Wells Fargo Bank, N.A., GSO Capital Partners, Third Avenue Management, Bank of Montreal, Royal Bank of Canada and Bank of Scotland.  In addition, Opportune is familiar with the Debtors' businesses, financial affairs, and capital structure.

5. For these reasons, I believe that Opportune is well qualified and uniquely suited to act as financial advisor to the Debtors.

### Services to be Provided[3]

6. Prior to the Petition Date, the Debtors, Weil, Gotshal & Manges LLP, and Opportune entered into the Engagement Letter, which governs the relationship among them.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and Opportune and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Opportune is prepared to provide the services described in the Engagement Letter as Opportune and the Debtors shall deem appropriate and feasible to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following (the "**Services**"):

---

[3] The summary of the Engagement Letter contained in this Declaration is provided for informational purposes only. In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter, as approved by the Court pursuant to the Proposed Order, shall control.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Engagement Letter.

<u>General Reorganization Efforts</u>:

    (i)    Assistance with the preparation of financial and other information for distribution to stakeholders and others, including, but not limited to: short term cash flow projections and budgets, mid/long term business case, cash receipts and disbursement analysis, and analysis of various asset and liability accounts;

    (ii)    Analysis of proposed transactions;

    (iii)    Assistance with the identification and implementation of short-term cash management procedures;

    (iv)    Assistance to management, counsel, and other advisors focused on the coordination of resources related to ongoing reorganization efforts;

    (v)    Attendance at meetings and assistance in discussions with potential investors, banks, other secured lenders, any committees, and other stakeholders and assistance with respect to due diligence requests from the same; and

    (vi)    Other general financial and restructuring advisory services as mutually agreed by the Company and Opportune.

<u>Bankruptcy Advisory Services</u>:

    (i)    Assistance in the preparation of bankruptcy documents, including "first day" motions;

    (ii)    Assistance in the preparation of financial related disclosures required by the Bankruptcy Court, including but not limited to Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

    (iii)    Assistance in the preparation of financial information including cash flow forecasts, long term business plans, and other key information;

    (iv)    Assistance with respect to mortgages and lien perfections;

    (v)    Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

    (vi)    Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

    (vii)    Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in such chapter 11 proceeding(s), including information contained in the plan and disclosure statement;

(viii)   Ongoing support with respect to managing the day-to-day requirements of the bankruptcy process; and

(ix)   Rendering such other general financial, restructuring, and business consulting or such other assistance management or counsel may deem necessary consistent with the role of a financial and operational advisor to the extent that it would not be duplicative of services provided by other professionals in such proceeding.

7.      As a result of its work with the Debtors, I believe that Opportune has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information.  Having worked with the Debtors' management and their other advisors, Opportune has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly, I believe that Opportune is well-qualified to represent them in a cost effective, efficient, and timely manner, and I submit that the employment and retention of Opportune is in the best interests of the Debtors, their creditors, and all parties in interest.

## Professional Compensation

8.      As consideration for the Services described above, Opportune shall be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter (the "**Fee and Expense Structure**").

9.      Opportune's current and standard hourly billing rates for its personnel, based on the position held by such Opportune personnel, is as follows:

| Position | Hourly Rate |
| --- | --- |
| Partner | $865 |
| Managing Director | $745 |
| Director | $630 |
| Manager | $560 |
| Senior Consultant | $435 |
| Consultant | $350 |
| Admin / Paraprofessional | $225 |

10.     Pursuant to the Engagement Letter, the Debtors will also reimburse Opportune for all reasonable and documented out-of-pocket expenses incurred in connection with Opportune's services, including parking, courier, overtime meals, copying and pasting, and certain travel expenses.

11.     Opportune received an initial retainer of $250,000 (the "**Retainer**") on November 1, 2017 from the Debtors related to its financial advisory work.  Pursuant to the Engagement Letter, the Retainer shall be carried by Opportune and credited against any amounts due at the termination of the engagement, with any remaining amount of the Retainer returned to the Debtors.  According to Opportune's books and records, during the 90-day period prior to the Petition Date, Opportune received approximately $1,278,682.00 from the Debtors for professional services performed and expenses incurred.  As of the Petition Date, no amounts were due or outstanding under the Engagement Letter.

12.     Opportune intends to apply for compensation for the Services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the *Guidelines for Reviewing Applications for Compensation filed under 11 U.S.C. § 330* (the "**U.S. Trustee Guidelines**"), and any other

applicable procedures and orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth through the Fee and Expense Structure.

13.     Opportune will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of the Services in these chapter 11 cases. Opportune's professionals shall maintain records, in summary format, of the Services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services in one-half hour (.5) increments, and the identity of the professionals who provided those services.  Opportune will present such records to the Court in its fee applications.

14.     To the best of my knowledge, (i) no commitments have been made or received by Opportune with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) Opportune has no agreement with any other entity to share with such entity any compensation received by Opportune in connection with these chapter 11 cases.  To date, Opportune has received compensation and reimbursement for financial advisory services from the Debtors as described in **Exhibit 1** attached hereto and incorporated herein by reference.

15.     By reason of the foregoing, I believe Opportune is eligible for retention and employment by the Debtors pursuant to 327(a) (as modified by sections 1107(b), 328, 330 and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Bankruptcy Local Rules).

### Indemnification

16.     I believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for Opportune and comparable firms providing financial

7

advisory services.  The terms and conditions of the indemnification provisions were negotiated

by the Debtors and Opportune at arm's length and in good faith.  I believe that the provisions

contained in the Engagement Letter, viewed in conjunction with the other terms of Opportune's

proposed retention, are reasonable and in the best interest of the Debtors, their estates, and

creditors in light of the fact that the Debtors require Opportune's services to successfully

reorganize.

**No Duplication of Services**

17.     To my knowledge, I believe that the Services provided by Opportune will

complement, and not duplicate, the services that other professionals will be providing to the

Debtors in these chapter 11 cases.  Specifically, I believe that Opportune will carry out unique

functions and will use reasonable efforts to coordinate with the Debtors and the other

professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

**Opportune's Disinterestedness**

18.     Opportune, together with its affiliates (the "**Firm**"), utilize certain

procedures ("**Firm Procedures**") to determine the Firm's relationships, if any, to parties that

may have a connection to a client debtor.  In implementing the Firm Procedures, the following

actions were taken to identify parties that may have connections to the Debtors, and the Firm's

relationship with such parties:

> a.  Opportune requested and obtained from the Debtors extensive lists of interested
> parties and significant creditors (the "**Potential Parties-in-Interest**").  The list of
> Potential Parties-in-Interest categories that Opportune reviewed is annexed hereto
> as **Schedule 1**.  The Potential Parties-in-Interest reviewed include, among others,
> the Debtors, prepetition lenders, noteholders, officers, directors, the 70 largest
> unsecured creditors of the Debtors, significant customers, utilities, insurers,
> significant counterparties to material agreements, and litigation claimants.
> Certain of the disclosures herein relate to matters within the personal knowledge
> of other professionals at Opportune and are based on information provided by
> them.  The list of Potential Parties-in-Interest is expected to be updated during
> these cases.  Opportune continues to review the relationships its professionals

8

may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist.  As may be necessary, Opportune will supplement this Declaration if it becomes aware of a relationship that may adversely affect Opportune's retention in these cases or discovers additional parties-in-interest through the filing of statements of financial affairs or statements under Bankruptcy Rule 2019.  Opportune will update this disclosure if it is advised of any trading of claims against or interests in the Debtors that may relate to Opportune's retention or otherwise requires such disclosure.

b.  Opportune then compared the names of each of the Potential Parties-in-Interest to the names in its master electronic database of the Firm's current and recent clients (the "**Client Database**").  The Client Database generally includes the name of each current and former client of the Firm.

c.  An email was issued to all Firm professionals requesting disclosure of information regarding: (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties-in-Interest or the Debtors, on the other hand; (ii) any known connections or representations by the respondent and/or the Firm of any of the Potential Parties-in-Interest in matters relating to the Debtors; and (iii) any other conflict or reason why Opportune may be unable to represent the Debtors.

d.  Known connections between former or recent clients of the Firm and the Potential Parties-in-Interest were compiled for purposes of preparing this Declaration. These connections are listed in **Schedule 2** annexed hereto.

19.     In reviewing its records and the relationships of its professionals, Opportune did not seek information as to whether any Opportune professional or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain Opportune professionals have invested, but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact Opportune's disinterestedness or otherwise give rise to a finding that Opportune holds or represents an interest adverse to the Debtors' estates.

20.     As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, Opportune:

    a.  Is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services), an equity security holder of the Debtors, or an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code;

    b.  Is not, and has not been, within 2 years before the Petition Date, a director, officer, or employee of the Debtors; and

    c.  Does not have an interest materially adverse to the interests of the Debtors' estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

21.    As can be expected with respect to any international professional services firm such as Opportune, the Firm provides services to many clients with interests in the Debtors' chapter 11 cases.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

22.    Known connections between former or recent clients of the Firm and the Potential Parties-in-Interest were compiled for purposes of preparing this Affidavit.  These connections are listed in Schedule 2 annexed hereto. In addition to the connections listed on Schedule 2, I note:

(1)    Opportune is the owner of certain a software product, Assent 143. The Debtor is a licensee of the Assent 143 software and has paid the Firm a total of $24,479.70 in licensing and associated fees in 2017.  This amount is immaterial to the overall revenues of Opportune.  Furthermore, Opportune licenses Assent 143 software to various other parties in interest.  The amount of revenue from these clients is immaterial to the overall revenues of Opportune.

(2)    Opportune was engaged by Energy XXI Ltd. ("**Energy XXI**") as the financial and tax advisor in their Chapter 11 proceedings.  Energy XXI emerged from Chapter 11 bankruptcy on December 31, 2016.  While our engagement with Energy XXI has concluded, from time to time, Energy XXI will request Opportune's assistance with various post-

emergence and other administrative matters.   These services are unrelated to Energy XXI's relationship to Fieldwood.   The fees for these services are *de minimis* and immaterial to the overall revenues of Opportune.

(3)     Opportune was engaged by Chaparral Energy Inc. ("**Chaparral**") as the financial and tax advisor in their Chapter 11 proceedings.   Chaparral emerged from Chapter 11 bankruptcy in March 2017.   Opportune's engagement with Chaparral concluded in 2017 and Opportune does not provide any restructuring or post-emergence related services.

(4)     Opportune's Process & Technology ("**P&T**") group provides back-office technology and software advisory and implementation services for both ExxonMobil and Noble Energy, Inc.   Opportune assists the midstream or downstream businesses of these companies.   Opportune's P&T group is not involved on the Fieldwood engagement and they do not provide financial or restructuring related advisory services to these clients.   This work is wholly unrelated to the work performed by Opportune in these chapter 11 cases.

(5)     Opportune's Land Group and Process & Technology Group provide due diligence services related to a joint-venture between Noble Energy's midstream business and a 3rd party, which is not a Party-in-Interest to Fieldwood.   In this engagement, Opportune does not advise Noble Energy's upstream business and Opportune does not provide any advisory services related to Noble Energy's relationship with Fieldwood.   This engagement is managed and conducted by Opportune personnel who are not involved on the Fieldwood engagement.

(6)     Opportune was engaged as the Financial Advisor to the Official Committee of Unsecured Creditors ("**SandRidge Committee**") in SandRidge Energy's Chapter

11 bankruptcy.   SandRidge emerged from Chapter 11 in October 2016.   Opportune's engagement as the advisor to the SandRidge Committee has concluded.

23.     Further, as part of its diverse practice, the Firm appears in cases and proceedings, and participates in transactions that involve many different professionals, attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which Opportune is to be employed, and none are in connection with these cases.

24.     To the best of my knowledge, no employee of the Firm is a relative of or has been connected with the U.S. Trustee in this district or its employees.

25.     Accordingly, to the best of my knowledge, Opportune is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, in that Opportune: (i) is not a creditor, equity security holder, or insider of the Debtors; (ii) was not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and (iii) does not have an interest materially adverse to the interest of the Debtors' estate or of any class of creditors or equity security holders.

26.     If any new material relevant facts or relationships are discovered or arise, Opportune will promptly file a supplemental declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: February 22, 2018
      Houston, Texas

By:      */s/  Scott Anchin*
       Scott Anchin
       Managing Director
       Opportune LLP

## Exhibit 1

### Opportune's Compensation

| Type | Date | Amount |
|------|------|--------|
| Retainer | 10/26/2017 | $250,000.00 |
| Payment | 11/1/2017 | ($250,000.00) |
| Invoice | 12/5/2017 | $204,957.00 |
| Payment | 12/12/2017 | ($204,957.00) |
| Invoice | 1/10/2018 | $218,522.50 |
| Payment | 1/11/2018 | ($218,522.50) |
| Invoice | 1/29/2018 | $331,055.00 |
| Payment | 1/30/2018 | ($331,055.00) |
| Invoice | 2/10/2018 | $274,147.50 |
| Payment | 2/12/2018 | ($274,147.50) |

## <u>Schedule 1</u>

### Potential Parties-in-Interest Categories

- Debtors
- Non-Debtor Affiliates/Parent/Subsidiaries
- Trade Names & Aliases (Last 8 years)
- Officers & Management Team - Current
- Board of Directors (Including Former)
- Known Affiliations of Directors
- Administrative and Collateral Agents
- Cash Management & Non-Debtor Banks
- Issuers of Letters of Credit
- Key Competitors
- Contract & Joint Venture Counterparties
- Key Customers
- Top 70 Vendors
- Top 30 Unsecured Creditors
- Secured Debt Holders
- RBL Credit Agreement Lenders
- Sponsor & Sponsor Affiliates
- Debtors' Restructuring Professionals
- Non-Debtor Restructuring Professionals
- Ordinary Course Professionals
- Insurance Brokers
- Insurance Providers & Sureties
- Third-Party Benefit Providers
- Landlords/Lessors
- Litigation Parties
- Utility Providers
- Taxing Authorities
- Southern District of Texas Bankruptcy Judges & Staff
- Clerk of the Court – Houston
- U.S. Trustee – Region 7
- U.S. Attorney's Office for the Southern District of Texas
- Governmental/Regulatory Agencies
- Other Potential Parties in Interest

## Schedule 2

### Opportune's Connections to the Debtors

- Energy XXI Ltd.
- Chaparral Energy Inc.
- ExxonMobil
- Noble Energy, Inc.